IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATHAN SAPPINGTON, <br><br> Plaintiff, <br> v. <br><br> ROGERS COUNTY BOARD OF COUNTY COMMISSIONERS and SCOTT WALTON, in his official capacity, <br><br> Defendants. | Case No. 18-cv-00423-JFH-JFJ |

**OPINION AND ORDER**

This matter comes before the Court on the Motion for Summary Judgment [Dkt. No. 53] and the Motion to Strike Sham Affidavit of Nathan Sappington and to Impose Rule 56(h) Sanctions [Dkt. No. 69], filed by Defendants Rogers County Board of County Commissioners ("Board of County Commissioners") and Rogers County Sheriff Scott Walton ("Walton") (collectively, "Defendants"). For the reasons set forth below, the Court grants summary judgment in favor of Defendants and denies Defendants' Motion to Strike.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Nathan Sappington ("Plaintiff") was employed by the Rogers County Sheriff's Office ("RCSO") between June 2008[1] and August 2017. Dkt. No. 22 at 2; Dkt. No. 53 at 11; Dkt. No. 59 at 6. In 2017, Plaintiff served as a Jail Administrator for the Rogers County Jail ("Jail"). *Id.* According to Plaintiff, he returned from a period of medical leave in May 2017 and discovered

---

[1] In his Second Amended Complaint, Plaintiff alleges his employment with RCSO began or about July 1, 2008. Dkt. No. 22 at 2. In their Motion for Summary Judgment, Defendants assert that Plaintiff's employment with RCSO began in June 2008. Dkt. No. 53 at 11. This statement is admitted by Plaintiff. Dkt. 59 at 6.

that incidents he considered to be life-threatening were not reported to the Oklahoma State Department of Health as required by Okla. Stat. tit. 74, § 192 and Okla. Admin. Code 310:670-5-2.  Dkt. 22 at 2-5.  Plaintiff claims that he was wrongfully discharged by RCSO in August 2017 in retaliation for raising concerns regarding these incidents and the failure to report them.  Dkt. No. 22 at 2-5.

Plaintiff filed this suit in the Rogers County District Court on July 27, 2018 alleging he was wrongfully discharged:  (1) for acting in accordance with Oklahoma public policy; and (2) in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12213.  Dkt. No. 2-1.  The case was removed to this court on August 17, 2018.  Dkt. No. 2.

Defendants moved to dismiss both claims asserted in the Complaint.  Dkt. No. 6.  Plaintiff filed an Amended Complaint, including additional allegations as to his wrongful discharge claim and omitting the ADA claim altogether.  Dkt. No. 12.  Defendants moved to dismiss the Amended Complaint, arguing Plaintiff had not alleged he was discharged in violation of a recognized violation of Oklahoma public policy.  Dkt. No. 14 at 3-5.  The Court granted the motion to dismiss without prejudice to the filing of a Second Amended Complaint.  Dkt. No. 21.  The Court stated, "Plaintiff shall specifically allege the incidents he reported that were 'life threatening or requiring transfer to outside medical facility' as set forth in OAC Section 310:670-5-2 (28)."  *Id.*

Plaintiff filed his Second Amended Complaint on April 11, 2019, identifying three specific incidents he reported which he considered to be life threatening:  (1) the stabbing of inmate D.R. by another inmate; (2) the possession of a noose by inmate D.K.; and (3) the assault of inmate J.S., while in restraints, by a Jail employee.  Dkt. No. 22 at 2-3.  Plaintiff alleged that he was wrongfully discharged after he reported these incidents to his superiors and expressed concern that they had not been reported to the Oklahoma Department of Health in accordance with Oklahoma public

policy. *Id.* at 4-5. Defendants moved for summary judgment arguing that Plaintiff's wrongful discharge claim must fail because he was not discharged but, rather, abandoned his position and because no clear mandate of public policy was implicated by the parties' alleged conduct.[2] Dkt. No. 53 at 10-21.

## II.   STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries this initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671. If the nonmovant demonstrates a genuine dispute as to material facts, the Court views

---

[2] Defendants also argue that the Board of County Commissioners is not a proper party to the lawsuit. Dkt. No. 53 at 21-22. However, the Court need not address this argument because its summary judgment analysis as to the elements of Plaintiff's wrongful discharge claim are dispositive of the disputed issues in this case.

the facts in the light most favorable to him. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, a failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III.     MATERIAL FACTS TO WHICH NO DISPUTE EXISTS

Plaintiff began working at RCSO as a jailer in June of 2008. Dkt. No. 53 at 11; Dkt. No. 59 at 6. In late 2015, Plaintiff was appointed Jail Administrator of the Rogers County Jail. Dkt. No. 53 at 11; Dkt. No. 59 at 7. From March 6, 2017 to May 1, 2017 Plaintiff was out on medical leave. Dkt. No. 53 at 7; Dkt. No. 59 at 11. After his return, Plaintiff was assigned to oversee and implement inmate work programs. *Id.* Sergeant Kellie Guess was assigned to oversee Jail operations. *Id.*

On March 26, 2017, inmate D.K. was discovered with a handmade noose. Dkt. No. 59 at 12; Dkt. No. 59-19. On June 20, 2017, inmate D.R. was stabbed by another inmate with a shank crafted from a toilet brush. Dkt. No. 59 at 12; Dkt. No. 59-17. D.R.'s assailant was charged with assault and battery with a dangerous weapon. Dkt. No. 59-17; Dkt No. 57-18 at 3. On July 14, 2017, inmate J.S., while restrained in a WRAP device, was hit in the face and pushed down by a corrections officer. Dkt. No. 59 at 13; Dkt. No. 6 (DVD 7/14/2017 10:43:06 – 10:43; 10:52:16 – 10:52:32).

On July 31, 2017, Plaintiff brought a number of incidents to the attention of Walton and expressed concern that the incidents were not being properly handled by the Jail's administration including the March 26, 2017 incident involving inmate D.K., the June 20, 2017 incident involving inmate D.R., and the July 14, 2017 incident involving inmate J.S. Dkt. No. 53 at 11; Dkt. No. 59 at 16; Dkt. No. 59-2 at 16-17; Dkt. No. 59-15 at 11, 25, 28, 35. Walton asked Undersheriff Jon

Sappington ("Undersheriff Sappington")[3] to look into the incidents reported by Plaintiff.  Dkt. No. 53 at 11; Dkt. No. 59 at 16; Dkt. No. 59-1 at 7-8.

On August 2, 2017, Undersheriff Sappington presented Plaintiff with a letter addressing his job performance and instructed him to "go to the house."  Dkt. No. 53 at 12; Dkt. No. 59 at 8, 16; Dkt. No. 59-1 at 26-28.  In the letter, Undersheriff Sappington addressed ongoing professional conflicts between Plaintiff and Sergeant Guess.  Dkt. No. 53 at 12; Dkt. No. 53-2 at 2; Dkt. No. 53-5; Dkt. No. 59 at 11, 16-17.  Undersheriff Sappington advised Plaintiff:

> [T]he Rogers County Sheriff's Office is a team.  Daily we are required to work together . . . . *[i]f for whatever reason you are unable to do this*, your removal from this office will be required.
>
> . . .
>
> *If you are unable to resolve your feelings* with [Sergeant Guess] it would be my recommendation that you look for a career change.  I would recommend leaving this place after 10 years in a way that if you were to change your mind you would have an opportunity to come back.
>
> . . .
>
> [F]ocus on the inmate road crews and Claremore property and maintenance and leave the other issues for administration to handle.

Dkt. No. 53-5 at 1-2 (emphasis added).

On August 4, 2017, Undersheriff Sappington sent Plaintiff a text message instructing Plaintiff to meet with him and Captain Virgil Carter ("Carter")[4] on August 7, 2017 at 8:00 a.m. so that they could "explain [Plaintiff's] options."  Dkt. No. 53 at 12; Dkt. No. 53-7 at 1; Dkt. No. 59 at 9.  In response, Plaintiff stated that there was no need to meet, that he would "never step foot in

---

[3]  Undersheriff Jon Sappington is Plaintiff's brother and is referred to as "Undersheriff Sappington" for clarity.  Dkt. No. 59-11 at 1.

[4]  Carter was directly above Plaintiff but below Undersheriff Sappington in Plaintiff's chain of command at RCSO.  Dkt. No. 59-2 at 3-4.

5

th[e] Jail." Dkt. No. 53-7 at 1, 3; Dkt. No. 59 at 9. Twice during the exchange, Plaintiff asked Undersheriff Sappington whether or not he had been fired. Dkt. No. 53-7 at 2, 4; Dkt. No. 59 at 9. While the Undersheriff did not expressly answer that question, he did urge Plaintiff to meet with him and Carter on August 7, 2017. *Id.* Plaintiff did not do so. Dkt. No. 53 at 13; Dkt. No. 53-1 at 29.

Plaintiff did not speak with Undersheriff Sappington, Carter or Walton again after being sent home on August 2, 2017. Dkt. No. 53-1 at 29. His absence from work on August 3, 2017 and August 4, 2017 was documented by the Jail as administrative leave. Dkt. No. 53-6 at 2. Walton understood that Plaintiff had been ordered to attend a meeting with Undersheriff Sappington and Carter on August 7, 2017, and that by failing to appear for the meeting, Plaintiff had effectively resigned. Dkt. No. 53-4 at 2. On August 10, 2017, Walton signed a termination form indicating that Plaintiff had resigned, effective August 7, 2017. Dkt. No. 53-8.

IV.   ANALYSIS

A.   The *Burk* Claim

Oklahoma adheres to the so-called American employment-at-will doctrine. *Moore v. Warr Acres Nursing Ctr., LLC*, 376 P.3d 894, 898 (Okla. 2016). Under this doctrine, employers are free to discharge at-will employees in good or bad faith, with or without cause. *Id.* At-will employees do not have a cognizable cause of action for wrongful discharge unless the claim falls within the narrow exception set forth in *Burk v. K-Mart Corp.*, 770 P.2d 24, 29 (Okla. 1989). *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1210 (Okla. 2008). In *Burk*, the Oklahoma Supreme Court recognized a tort cause of action in favor of an at-will employee who is discharged "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Burk*, 770 P.2d at 29.

6

To succeed on a *Burk* claim, a plaintiff must demonstrate: (1) an actual or constructive discharge; (2) of an at-will employee; (3) in significant part for a reason that violates an Oklahoma public policy goal; (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma; and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal. *See McCrady v. Okla. Dept. of Pub. Safety*, 122 P.3d 473, 475 (Okla. 2005). Defendants argue that Plaintiff's *Burk* claim fails because Plaintiff was not discharged from his employment, but rather resigned when he did not attend the August 7, 2017 meeting with Undersheriff Sappington and Carter as directed and because his termination does not implicate a clear mandate of public policy. Dkt. No. 53 at 16-21.

It is undisputed that on August 2, 2017, Undersheriff Sappington presented Plaintiff with the letter of admonishment and told him to go home. Dkt. No. 53 at 12; Dkt. No. 59 at 8, 16; Dkt. No. 59-1 at 26-28. In the letter, Undersheriff Sappington instructed Plaintiff to focus on the projects assigned to him and advised Plaintiff that his position with RCSO would be in jeopardy *if* he could not resolve his conflicts with Sergeant Guess. Dkt. No. 53-5 at 1-2. Undersheriff Sappington did not state that Plaintiff's employment was at that time, or would be, terminated. In fact, the only mention of potential discharge was conditioned upon Plaintiff's failure to work amicably with Sergeant Guess. *Id.* And by encouraging Plaintiff to "focus on the inmate road crews and Claremore property and maintenance" assigned to him, Undersheriff Sappington's letter contemplates Plaintiff's continued employment with RCSO.

On August 4, 2017, Plaintiff communicated with Undersheriff Sappington via text message and twice inquired as to whether or not his employment had been terminated. Dkt. No. 53-7 at 2, 4; Dkt. No. 59 at 9. Undersheriff Sappington directed Plaintiff to meet with him and Carter on

7

August 7, 2017 at 8:00 a.m.  Dkt. No. 53 at 12; Dkt. No. 53-7 at 1; Dkt. No. 59 at 9.  Plaintiff did not attend that meeting or return to work at RSCO.  Dkt. No. 53 at 13; Dkt. No. 53-1 at 29.  Jail records reflect that Plaintiff was on administrative leave on Thursday, August 3, 2017 and Friday, August 4, 2017 and that Plaintiff was deemed to have resigned on August 7, 2017.  Dkt. No. 53-4 at 2; Dkt. No. 53-6 at 2; Dkt. No. 53-8.

Plaintiff has submitted his affidavit in which he states that he believed he was discharged on August 2, 2017, after Undersheriff Sappington threw the letter of admonishment at him and told him to "go to the house."  Dkt. No. 59 at 16  (stating, "It was clear to me that my brother was firing me . . .").  Dkt. No. 59-11 at 6.  However, this position is contrary Plaintiff's prior behavior on August 4, 2017 when he twice asked Undersheriff Sappington whether or not he had been fired.  Dkt. No. 53-7 at 2, 4; Dkt. No. 59 at 9.  Moreover, Plaintiff's subjective belief that he had been discharged on August 2, 2017 is not sufficient to create a material issue of fact regarding whether or not Plaintiff was actually discharged.

Ultimately, it is clear that Plaintiff's claim that he was discharged rests in the letter of admonishment.  Dkt. No. 59-11 at 6 (stating, "It was clear to me that my brother was firing me and the letter demonstrates it was because of my complaints . . . ").  However, no reasonable jury could find that Plaintiff was discharged based upon the words written in this letter.  To the contrary, while the letter contained admonishment, it instructed Plaintiff the expectations of him going forward.  Dkt. No. 53-5 at 1-2 (advising that "the Rogers County Sheriff's Office is a team.  Daily we are required to work together . . .").  The letter cast a view toward Plaintiff's continued employment but noted conditions that must be met, which were within Plaintiff's control.  The letter also warned Plaintiff of the consequences of his failure to meet expectations.  *Id*. (advising Plaintiff that:  "[i]f for whatever reason you are unable to do this, your removal from this office will be required;" and "[i]f you are unable to resolve your feelings with [Sergeant Guess] it would

8

be my recommendation that you look for a career change."). In addition, the letter offered Plaintiff advice as to how to move forward in his continued employment. *Id.* (advising Plaintiff to "focus on the inmate road crews and Claremore property and maintenance and leave the other issues for administration to handle."). Finally, in the event Plaintiff was unable to comply with the admonitions, the letter recommend Plaintiff leave his employment after 10 years "in a way that if [he] were to change [his] mind [he] would have an opportunity to come back." *Id.*[5]

The Court concludes that Defendants have demonstrated an absence of evidence to support actual discharge—the first element of Plaintiff's *Burk* claim and Plaintiff has failed to present specific evidentiary facts sufficient to create a genuine issue of material fact on that element. Therefore, summary judgment in Defendants' favor is appropriate. *See Celotex*, 477 U.S. at 322-23 (recognizing that summary judgment is appropriate where the movant establishes the absence of evidence to support an essential element of the nonmoving party's case). Because there is no genuine issue of material fact as to whether Plaintiff was discharged, the Court need not address whether any genuine issue of material fact exist as to whether Plaintiff was discharged in violation of Oklahoma public policy. *See id* (holding that a failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

    **B.**    **Defendants' Motion to Strike and for Sanctions**

Although the Court did not address Defendants' argument that the alleged conduct in this case does not implicate a clear mandate of Oklahoma public policy in the context of summary

---

[5] Plaintiff also asserts that a RCSO employee came to his home on August 4, 2017, to inform him that if he agreed to sign a document stating that he had resigned, RSCO would not dispute a claim for unemployment benefits but if he refused, RSCO would claim that Plaintiff abandoned his position. Dkt. No. 59 at 19-20; Dkt. No. 59-11 at 6. This assertion is insufficient to create a material issue of fact regarding whether or not Plaintiff was actually discharged on August 2, 2017.

judgment, it will discuss the argument briefly as it pertains to Defendants' motion to strike and for sanctions.

As previously discussed, to succeed on a *Burk* claim, Plaintiff would have to show that he was an at-will employee of RCSO, who was discharged "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Burk*, 770 P.2d at 29. In bringing this suit, Plaintiff claimed that he was discharged for raising concerns about an incident involving inmate D.R., an incident involving inmate D.K., and an incident involving inmate J.S., which he believed should have been reported to the Oklahoma Department of Health, as required by Okla. Stat. tit. 74, § 192 and Okla. Admin. Code 310:670-5-2. Dkt. 22 at 2-5.

In pertinent part, Okla. Admin. Code 310:670-5-2 requires that the Oklahoma Department of Health be notified regarding serious suicide attempts and incidents involving serious injury to staff or inmates. *See* Okla. Admin. Code 310:670-5-2(27). Serious suicide attempts and serious injuries are defined as those that are life threatening or require transfer to an outside medical facility. *Id.*

In seeking summary judgment, Defendants argued that Oklahoma public policy was not implicated by the Jail's failure to report the incidents involving inmates D.R., D.K., and J.S. because none of the incidents were life threatening or required transfer to an outside medical facility. Dkt. No. 53 at 15-19. In response, Plaintiff submitted his affidavit, which referenced five additional incidents involving inmate J.S., one of which required J.S. to be transferred to an outside medical facility. Dkt. No. 59-11 at 4-5.

Defendants now move to strike the affidavit claiming that in his filings and sworn statements up to this point Plaintiff only claimed to have reported to Walton one incident involving

10

inmate J.S. Defendants assert that Plaintiff learned of the additional incidents—including the incident for which J.S. was transferred to an outside medical facility—in discovery, and that Plaintiff is now claiming to have reported the additional claims involving J.S. to create a sham issue of fact. Dkt. No. 69 at 2-5.

"There is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." *Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1281 (10th Cir. 2003) (internal quotation marks and citation omitted); *see also Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985) (holding that "[a]n inconsistent affidavit may preclude summary judgment . . . if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony"); 10B Charles Alan Wright et al., Federal Practice & Procedure § 2738, at 334 ("[A] witness' affidavit will not be automatically excluded because it conflicts with the witness' earlier or later deposition."). A court may, however, disregard a contrary affidavit when it "constitutes an attempt to create a sham fact issue." *Burns*, 330 F.3d at 1282 (internal quotation marks and citation omitted).

Here, the challenged portion of Plaintiff's affidavit goes to whether Defendants' alleged conduct violated a clear mandate of Oklahoma public policy. It is not relevant to the issue of actual discharge, on which the Court has determined summary judgment appropriate. Because the Court did not consider the challenged portion of Plaintiff's affidavit in deciding whether to grant summary judgment, the Court concludes that Defendants' motion to strike Plaintiff's affidavit is moot.

Defendants also seek sanctions under Rule 56(h), arguing that Plaintiff's affidavit was submitted in bad faith. Dkt. No. 69 at 6-7. Where an affidavit is submitted under Rule 56 in bad

11

faith or solely for delay, the Court may award reasonable expenses, including attorney's fees, hold an offending party or attorney in contempt, or impose other appropriate sanctions. Fed. R. P. 56(h); *see Masterson v. Killen*, No.1:11-cv-01179-DAD-SAB (PC), 2017 WL 892761, at *2 (E.D. Cal. Mar. 7, 2017) ("Bad faith in the context of Rule 56(h) requires a deliberate or knowing act for an improper purpose."); *DeLorme v. Markwitz*, No. 14-CV-6104-FPG, 2017 WL 512617, at *3 (W.D.N.Y. Feb. 8, 2017) (for purposes of Rule 56(h), "bad faith' is only found . . . when the attorney's conduct is egregious, such as where affidavits contain perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case."). Imposing sanctions under Rule 56(h) is discretionary, not mandatory, "reflecting the experience that courts seldom involve the independent Rule 56 authority to impose sanctions." *Profita v. Puckett*, No. 15-CV-01237-DME-CBS, 2017 WL 1491003, at *28 (D. Colo. Apr. 25, 2017); *see Nationwide Mut. Fire Ins. Co. v. D.R. Horton, Inc.*, No. 15-351-CG-N, 2016 WL 6828206, at *4 (S.D. Ala. Nov. 18, 2016) (recognizing that in the context of sanctions under Rule 56(h), the Court "has wide discretion in deciding what constitutes bad faith.").

Here Plaintiff's affidavit reads in pertinent part, "In reviewing [J.S.'] jail records, he is reported to have been placed in the WRAP [restraint device] on at least nine occasions. From those records, I have determined that a number of those would have been recorded by video surveillance, based upon where they occurred at the jail." Dkt. No. 59-11 at 4. Plaintiff goes on to describe five such incidents. *Id.* at 4-5. Plaintiff does not assert that he was aware of these incidents or that he reported them to Walton prior to the termination of his employment with RCSO. *Id.* Accordingly, the Court cannot conclude that Plaintiff's affidavit includes statements

that conflict with his prior filings and sworn statement, or that the affidavit was submitted in bad faith or solely for delay.[6]

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Dkt. No. 53] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Sham Affidavit of Nathan Sappington and to Impose Rule 56(h) Sanctions, filed by Defendants Rogers County Board of County Commissioners and Scott Walton [Dkt. No. 69], is **DENIED**.

Dated this 18th day of November 2020.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[6] The Court does have concern about how Plaintiff's affidavit and the references to the additional incidents involving inmate J.S. are used in Plaintiff's responses to Defendants' motion for summary judgment and motion to strike. In his response to Defendants' motion for summary judgment, Plaintiff made a number of new allegations regarding incidents involving inmate J.S. and the WRAP restraint device. Dkt. No. 59 at 13-16. For the first time, Plaintiff claimed to have complained about the use of force and the use of the WRAP restraint on J.S. *on a number of occasions*, including one incident that resulted in J.S. being transported for outside medical attention. *Id.* at 15, 22. In his response to Defendants' motion to strike, Plaintiff claims that his "knowledge of [J.S.]'s medical history coupled with the repeated use of force through the WRAP were part of and informed Plaintiff's report on [J.S.] to Defendants." Dkt. No. 78 at 4. These new assertions reflect a shift in Plaintiff's theory of the case and are inconsistent with Plaintiff's prior assertions regarding the one incident involving J.S. reported up Plaintiff's chain of command and with the record evidence in this case. Dkt. No. 22 at 2-3; Dkt. No. 53 at 11; Dkt. No. 59 at 15-16, 39-54; Dkt. No. 59-2 at 16-17; Dkt. No. 59-15 at 11, 25, 28, 35. Had these assertions been made expressly in Plaintiff's affidavit, the relief requested by Defendants might be appropriate. However, because Plaintiff does not expressly claim to have reported the additional incidents involving J.S. in his affidavit, the Court cannot conclude that the affidavit was submitted in bad faith. Dkt. 59 at 15; Dkt. No. 59-15 at 39-54. That being said, counsel is advised to be careful in making statements to the Court in their briefing which are not supported by the evidentiary material to which they cite.